BEFORE THE SECOND DIVISION, FEBRUARY 15, 1960

No. 63810.—Humphrey & MacGregor, Inc. (Balex Company, Incorporated) *v.* United States, protests 276118–K and 265789–K (Tampa).

OLIVER, Chief Judge: These protests relate to certain lead pipe that was classified under the provision for "scrap lead" in paragraph 392 of the Tariff Act of 1930, as amended, with a duty assessment at the rate of 1$\frac{1}{16}$ cents per pound. Plaintiffs claim that the merchandise is entitled to free entry under the provision for "Articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, imported to be used in remanufacture by melting," of the Act of March 13, 1942 (56 Stat. 171), as extended and amended by Public Law 869 of September 30, 1950 (64 Stat. 1093), and Public Law 678 of August 27, 1954 (68 Stat. 882).

The pertinent provisions of Public Law 869, *supra*, are as follows:

* * * Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the

Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and non-ferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

Sec. 2. Articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, imported to be used in remanufacture by melting, shall be accorded entry free of duty and import tax, upon submission of proof, under such regulations and within such time as the Secretary may prescribe, that they have been used in remanufacture by melting: *Provided*, *however*, That nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.

Public Law 678, *supra*, so far as pertinent herein, includes a proviso to the effect that the foregoing statutory provisions "shall not apply to lead scrap."

Laboratory reports (defendant's exhibits A and B) show that the merchandise in question is composed of lead. The sole question before us is whether the commodity in question is "scrap," within the meaning of that term, as defined in the statute hereinabove set forth. The issue is one of fact.

Plaintiffs introduced the testimony of two witnesses. Their testimony was taken by deposition under commissions issued by this court (plaintiffs' exhibits 1 and 7). Documents containing the questions and answers of the witnesses in seriatim form were also received in evidence (plaintiffs' exhibits 2 and 8). Each of the witnesses testified with respect to a different shipment involved herein so that the combined testimony of both covers the merchandise included in the two shipments under consideration. Following is a review of the testimony of each witness.

Testimony concerning the merchandise identified in the commission (plaintiffs' exhibit 1) as "380 coils (55,115 lbs.) of lead pipe" and described as "55,115 libras de tubo de plomo de 19 mm. (¾'')" on the invoice with entry 0711 covered by protest 276118–K, was submitted by the manager of Pure Lead Products, Inc., of Miami, Fla., the ultimate consignee of the merchandise. The witness stated that he is in charge of the entire operations of the plant and that he was responsible for the importation of the merchandise referred to. Describing the condition of the imported merchandise, he testified as follows:

It was shipped to us in coils. The lead had been manufactured, I believe, in Mexico, but it came to us in such condition that it was termed "scrap." It was so badly dented from handling that it was impossible to use it in that original form. However, we did agree to remelt this lead upon arrival. I think the allowance was about seven days, or something like that. There were no fittings or threads.

The witness testified further that "the metal we received was melted down upon receipt and converted by our manufacturing processes into the materials which we make and sell to the plumbing trade, et cetera."

Testimony, with reference to the merchandise identified in the commission (plaintiffs' exhibit 7) as "387 coils (54,846 lbs.) of lead pipe" and described as "54,848 Libras de Tubo de Plomo de 19 mm. (¾'')" on the invoice with entry 0441 covered by protest 265789–K, was submitted by the secretary-treasurer of the A.M.A. Corporation of Florida. The witness stated that he purchased the said merchandise and sold it as caulking lead. In his description of the merchandise, as imported, he stated that—

* * * It was in coils, not lengths. I think it was new. Some of it was in good condition and some of it was mashed in. There were no fittings and no threading.

Asked whether the merchandise was imported to be used in remanufacture by melting, the witness testified as follows:

Yes, it was for melting purposes. We remelted it and put it into caulking lead. I don't know whether it was bought for that purpose, but we did that. We don't do the buying here, so I don't know what conditions it was bought under, but I know that is what we did with it, we melted it into caulking pigs.

Defendant introduced the testimony of the United States appraiser of merchandise at Tampa, Fla., where the merchandise under consideration was entered. The witness testified that he examined both of the shipments in question and that he found the merchandise "was dented, mashed, and damaged, and it also had cuts in it." (R. 23.) He identified two samples (defendant's exhibits D and E) as representative of each of the shipments in question. They are pieces of damaged pipe, about 2 feet long, that were cut by the appraiser by means of a hacksaw from the imported coils, which were between 25 and 50 feet in length. On cross-examination, he stated that the merchandise "was placed on pallets" so he was unable to examine the entire shipments; that he examined "the various coils that were on the top of the pallets, and the outside edge and the inside edge on some of them was dented, and some of them were cut"; and that the cut appeared to be the result of "some kind of a sharp instrument, possibly an axe, or something." (R. 29.) The witness admitted that although the pipe was mashed in in several places, liquid could flow through.

At this point, it should be noted that "the law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C.C.P.A. (Customs) 157, C.A.D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75). It is also appropriate to mention the fundamental principle in customs law that the plaintiff in a classification case has the twofold burden of proving the correctness of the alleged claim, as well as showing that the collector's classification is wrong. (*Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C.C.P.A. (Customs) 150, C.A.D. 227; *United States* v. *Enrique C. Lineiro*, 37 C.C.P.A. (Customs) 5, C.A.D. 410.)

Plaintiffs have not sustained their burden. On the contrary, there is testimony by plaintiffs' witnesses, including an admission that the present merchandise is scrap, which lends support to the collector's classification. On the basis of the present record, plaintiffs have failed to overcome the presumption of correctness attaching to the classification by the collector of this merchandise as scrap lead. Accordingly, we hold the items in question, as hereinabove identified, to be properly dutiable under the *eo nomine* provision for "scrap lead" in paragraph 392, as amended, *supra*, as assessed by the collector.

The conclusion makes it unnecessary to discuss plaintiffs' evidence concerning compliance with customs regulations necessary to support the claim for free entry invoked herein.

The protests are overruled and judgment will be rendered accordingly.